UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CR-21-00655-TUC-JGZ-EJM |
| | ) | |
| Luis Manuel Bray-Vazquez, | ) | |
| | ) | |
| Defendant. | ) | Tucson, Arizona |
| | ) | August 24, 2021 |

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JENNIFER G. ZIPPS
UNITED STATES DISTRICT JUDGE

For the Plaintiff:
Ms. Angela W. Woolridge
U.S. Attorney's Office
405 West Congress Street, Suite 4800
Tucson, AZ 85701

For the Defendant:
Mr. Jamiel Allen
Federal Public Defender's Office
407 West Congress Street, Suite 501
Tucson, AZ 85701

Interpreter:
Ms. Hortensia Studer

Proceedings recorded by mechanical stenography, transcript produced by computer.

Aaron H. LaDuke, RMR, CRR
Federal Official Court Reporter
405 W. Congress St.
Tucson, Arizona 85701

P R O C E E D I N G S

THE CLERK: In criminal matter 21-655, United States of America versus Luis Manuel Bray-Vazquez, on for sentencing.

Counsel, please state your appearances.

MS. WOOLRIDGE: Good afternoon, Your Honor. Angela Woolridge appearing on behalf of the United States.

THE COURT: Good afternoon.

MR. ALLEN: Good afternoon, Your Honor. Jamiel Allen appearing on behalf of Luis Manuel Bray-Vazquez. He is appearing via video with his consent, and I would request consent for me to appear telephonically based on the news of an office shutdown last week and indirect COVID exposure.

THE COURT: All right. Thank you. Good afternoon, Mr. Allen.

Good afternoon, Mr. Bray.

THE DEFENDANT (Through interpreter): Good afternoon, ma'am.

THE COURT: Mr. Bray, you do have a right to be present here in court for a sentencing hearing, but currently we're not transporting people to court because of the health crisis. Did you speak with Mr. Allen about appearing today via video conference?

THE DEFENDANT (Through interpreter): Yes, ma'am.

THE COURT: And are you consenting to going forward via video conference?

THE DEFENDANT (Through interpreter): Let's go forward, please.

THE COURT: And Mr. Allen, was he able to explain to you that he's going to appear via telephone today because of a coronavirus exposure at his office?

MR. ALLEN: Your Honor, I was not able to communicate that with Mr. Bray. My last meeting with him was prior to the notification on Friday.

THE COURT: All right. Thank you, Mr. Allen.

So, Mr. Bray, your attorney would normally be here in court, but his office, there was an exposure at their office, so he's requested to appear at your hearing telephonically. Do you consent to his appearance via telephone?

THE DEFENDANT (Through interpreter): Yes, all right. Thank you.

THE COURT: All right. Thank you.

Because your attorney is not here, let me ask those in the courtroom, are you here on Mr. Bray's behalf?

All right. Does anyone need a headset to hear an interpretation?

No. All right. Thank you.

So, Mr. Bray, you do have some family members that are here for the hearing as well.

Mr. Allen, did you review the presentence investigation report with Mr. Bray?

MR. ALLEN: Yes, Your Honor.

THE COURT: Mr. Bray, have you been satisfied with the services of your attorney?

THE DEFENDANT (Through interpreter): Yes, ma'am. Thank you. Yes.

THE COURT: Mr. Bray, you pled guilty to the charge of smuggling goods from the United States; and based on your plea, the Court finds you guilty in violation of 18, United States Code, Section 554(a).

I'm going to adopt the guideline calculations that are set forth in the presentence investigation report. There were no objections filed to that report. The Court finds that the advisory sentencing guideline range is 46 to 57 months of imprisonment.

I have reviewed the sentencing memoranda that were filed by each of the parties. I've also reviewed the letters that were submitted on Mr. Bray's behalf. I note that the parties indicated in their filings that there is an oral agreement for a one-level reduction for early disposition -- or, I'm sorry, for waiver of the indictment, and that results in an advisory guideline range of 41 to 51 months. The Court will accept the parties' agreement as to that matter.

Mr. Allen.

MR. ALLEN: Thank you, Your Honor. Just to reiterate our request for the 27-month sentence, we would ask for

an additional variance and the Court's consideration, and we submit that under these particular circumstances it would be warranted.

Mr. Bray, he's known by his friends to be a very responsible, hardworking individual. He didn't have a terrible childhood or difficult upbringing, necessarily; but he did grow up, as explained in my memorandum, around, unfortunately, nefarious actors and conduct.

He has an outpouring of family support exhibited by the letters. I don't know exactly which family members came today. I know for a fact one of them is a sister because she had advised me she was coming, and it also sounds like additional family members did come in support of him. I would ask the Court to consider that in addition to the letters and the people who came out to visit him. It's a testament to this being aberrant behavior and aberrant conduct on his behalf.

He's an individual who was essentially rising through the ranks and had what appears to me to be a promising, you know, career and future. He was sort of hitting his stride in connection to employment, family, taking care of his own children. He does have those parental responsibilities that he took seriously and those obligations.

It's difficult to really pin down exactly how he got involved with this particular conduct and the transportation

of the firearms. He definitely recognizes and acknowledges the impact that it has not only on his own country but just the fact that it was, you know, unlawful behavior that caused great harm to the community at large or had the potential to.

And I think it's also -- but it's also difficult for maybe us to recognize or at least comprehend and understand the nervous and confused and difficult situation that he found himself in, where he had taken steps not really knowing how to get himself out of. It wasn't a situation or circumstances that was driven by greed or some other kind of desire to be involved with individuals. He was an individual who started down a -- took a bad step and could not figure out how to reverse it himself, and it got reversed when he got arrested.

I think that his employment history, his family history, his family responsibilities, and also the certificates of recognition that we submitted indicate that he is a very low risk to recidivate and that this character was out of conduct -- out of character and aberrant; and the family ties and the dependents that he has sort of reinforce the arguments that we're submitting to the Court today.

So for those reasons, Your Honor, and also the final reason, Mr. Bray's at least effort at some over acceptance postarrest, would be reasons why we'd ask the Court to consider an additional variance and impose a sentence of no more than 27 months.

THE COURT: All right. Thank you, Mr. Allen.

Mr. Bray, this is your opportunity to say anything you want the Court to consider.

THE DEFENDANT (Through interpreter): First of all, thank you for allowing me to speak in your courtroom. I am very sorry. I'm very ashamed for my actions. I want to apologize to you, to society, and to the two countries that I offended with my actions. That was never my way of life. I was desperate and I made the wrong decision due to my nerves, I was nervous.

I understand the seriousness of the situation, and I dare ask for clemency, leniency with my sentence, more than anything for the sake of my wife, my daughters, my mother, and my family. They are the ones that are suffering with me, and because of me, this painful correction. I never thought that I would learn the true meaning of life in jail, and I can assure you the man you're sentencing today is very different from the one who was arrested.

I ask you for leniency, and I thank you and the attorney and the probation officer and anybody that was involved in my case. I thank my family for coming, and I thank everybody, and may God bless everybody and may God bless America. Thank you.

THE COURT: Thank you, Mr. Bray.

Ms. Woolridge.

MS. WOOLRIDGE: Thank you, Your Honor.

As the government has set out in its sentencing memorandum, we are recommending a sentence of 46 months, no less than 46 months imprisonment in this case. That represents the middle of the guideline range after granting the additional level of reduction for the defendant's waiver of his right to indictment and plea to an information in this case. It is also the recommendation by the Probation Department, and I believe that there are a number of circumstances in this case that weigh against an argument for a departure or variance. We do not believe that it is appropriate. We agree with the Probation Department, especially when considering some of the very egregious aggravating factors in this case.

First of all, the offense itself is a very serious offense. This is involving the smuggling of several high-powered semiautomatic assault firearms, including a Barrett .50 caliber rifle, on multiple occasions. This was not one-time aberrant conduct, Your Honor, but it occurred on several, several separate instances, which shows that the defendant had an opportunity to reflect on the severity of his actions and the harm that it caused and the illegality of his conduct, but he nonetheless chose to engage in this repeated conduct several times.

The amount of harm that has already been caused and can

still be caused and will be caused in the future by the weapons that the defendant did successfully smuggle into Mexico really is staggering, and he's doing this on behalf of a criminal organization. These organizations don't use these weapons for anything but harm as well as promoting their other crimes.

And so, Your Honor, I think that the sentence does need to be significant in this case to reflect the severity of the offense, especially when considering the specific type of weapons that were being smuggled, I think more serious than some of the other cases we see of this nature.

What is especially concerning, Your Honor, with regard to the danger that he caused others is that the defendant attempted to flee through the port of entry and caused great risk of harm to the officers that were working in the port of entry when they were simply doing their job. Fortunately, no one was hurt, but this was a case where the defendant came so close to striking one of the officers as he attempted to flee that had he not swerved, he would have easily hit and struck the officer. So, Your Honor, the risk of his flight or attempted flight further exacerbates the severity of this charge.

The defendant was employed at the United States Consulate and abused his employment, his ability to cross easily from Mexico into the United States and back into Mexico while

committing his crimes. He was using a consular vehicle, no doubt in an attempt to escape detection or avoid inspection.

Your Honor, that's very concerning. I think it's abuse of a position of trust. It's also an abuse of his particular employment with regard to here's someone who is probably more aware even than the average person about the importance of preventing this type of conduct, the harm that smuggling weapons into Mexico from the United States can cause both countries and the international relationship between the countries as well as just the specific harm it can cause citizens of both countries that are put in the path of this destruction and of these violent type of crimes, these deadly weapons.

So if anyone, Your Honor, the defendant should have known and recognized the severity of his conduct but instead used his position and abused his position to commit these offenses. And he committed them out of greed, Your Honor. He was gainfully employed. He had, as his attorney points out, a good and promising career. He could have been just fine financially. He could have provided for his family had he just avoided this repetitive and serious criminal conduct, but he committed it out of greed, Your Honor. His claims of having fear turned out to be unsubstantiated, but instead he was paid each time he unlawfully smuggled these weapons into Mexico.

Your Honor, we do believe that all of these aggravating factors weigh against any downward variance or departure, and we do believe a sentence of 46 months is appropriate in this case.

THE COURT: Thank you, Ms. Woolridge.

I have considered the information presented and the 3553(a) factors. I note that Mr. Bray has family support and that he has accepted responsibility. However, given the circumstances of the offense, I am going to deny the request for a variance.

In addition to the seriousness of the offense, there are the circumstances of the offense where Mr. Bray attempted to flee outbound, in the outbound lanes, into Mexico and created a danger to officers at the port of entry. He knew that he was buying, or I should say transporting weapons for a drug trafficking organization. He abused his position with the U.S. Consulate. He betrayed his employer and his country by allowing these weapons to travel into Mexico, and it occurred on more than one occasion. So with those facts, the Court does not believe that a variance is appropriate.

I'm going to order, Mr. Bray, in light of the 3553(a) factors, that you be committed to the Bureau of Prisons for 46 months.

There is a mandatory $100 special assessment you'll be required to pay.

The Court finds you don't have the ability to pay a fine, and I'll order that a fine be waived.

Upon your release, I'm going to order that you be placed on a term of supervision for 36 months. During that term of supervision, you'll be required to comply with the standard conditions of supervision adopted by the Court in General Order 17-18, including the condition that you not commit another crime.

I'm also going to impose a special condition that you not return to the United States without permission to do so.

Ms. Woolridge, are there any forfeiture issues?

MS. WOOLRIDGE: No, Your Honor, there are not. Thank you.

THE COURT: Mr. Bray, do you understand your sentence?

THE DEFENDANT (Through interpreter): Yes, ma'am. Thank you.

THE COURT: There is no waiver of appeal rights either, correct, in the oral agreement, Ms. Woolridge?

MS. WOOLRIDGE: No, Your Honor. The only oral agreement has to do with the additional level.

THE COURT: All right. So, Mr. Bray, if you believe that the Court has made an error, you do have a right of appeal. To preserve your appeal rights, you would be required to file a notice of appeal within 14 days of today's date.

Counsel would be appointed to represent you during the appeal process.

Mr. Bray, do you understand your appeal rights?

THE DEFENDANT (Through interpreter): Yes, I understand, ma'am.

THE COURT: Mr. Bray, do you have any questions?

THE DEFENDANT (Through interpreter): No. Thank you very much and may God bless you.

THE COURT: Mr. Allen, is there anything further?

MR. ALLEN: Nothing further from the defense.

THE COURT: Anything further from the government?

MS. WOOLRIDGE: No, Your Honor. Thank you.

THE COURT: All right. Thank you.

Good luck to you, Mr. Bray. You can go ahead and knock on the door behind you, and they'll let you back into the facility. Thank you.

THE DEFENDANT (Through interpreter): Thank you.

(Court recessed.)

C E R T I F I C A T E

I, Aaron H. LaDuke, do hereby certify that I reported the foregoing proceedings to the best of my skill and ability, and that the same was transcribed by me via computer-aided transcription, and that the foregoing pages of typewritten matter are a true, correct, and complete transcript of all the proceedings had, as set forth in the title page hereto.

Dated this 7th day of October, 2021.

s/Aaron H. LaDuke
Aaron H. LaDuke, RMR, CRR
Official Court Reporter